UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Carnetha McWhite Gray, | ) | C/A No. 5:14-01172-JMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting Commissioner | ) | OF MAGISTRATE JUDGE |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). The issues before the court are whether the Commissioner's findings are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.    Relevant Background

A.    Procedural History

On April 27 and May 13, 2011, Plaintiff protectively applied for DIB and SSI under Title II and Title XVI of the Act, 42 U.S.C. §§ 401-433. Tr. 37; 94-100; 410-15.[1] She alleged a disability onset date of November 18, 2010. Tr. 37; 95; 410. Plaintiff's application was denied

---

[1] "Tr." is an abbreviation for "Transcript of the Record" made before the Social Security Administration in connection with Plaintiff's claim for DIB and SSI. It is located on this court's docket at ECF No. 12.

initially and upon reconsideration, Tr. 37-66; 73-74, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 75-76. The administrative hearing was held on May 22, 2013, Tr. 441-504, and on September 5, 2013, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the Act, Tr. 15-26. The Appeals Council denied Plaintiff's request for review. Tr. 8-11. Thus, the ALJ's decision became final and this case is ripe for judicial review pursuant to 42 U.S.C. § 405(g). Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on March 28, 2014. ECF No. 1.

  B.  Plaintiff's Background

Plaintiff was born on March 18, 1964, and was 46 years old as of her alleged onset date of November 18, 2010. Tr. 37; 441. Plaintiff completed high school and obtained a nursing assistant certificate. Tr. 174, 444; ECF No. 20 at 8. Her past relevant work ("PRW") included medical assistant and daycare worker/owner. Tr. 447-49. Plaintiff claimed the illnesses and conditions that limit her ability to work are rheumatoid arthritis and residuals of breast cancer. Tr. 452-65.

  C.  The Administrative Proceedings

    1.  Plaintiff's Hearing Testimony

Plaintiff was 49 years old at the time of her hearing, and testified that she was married and lives with her husband, father, and 10 year old son. Tr. 441. Plaintiff testified that she completed high-school and later received a certificate to be a certified nursing assistant ("CNA"). Tr. 444. Plaintiff stated that she was five-foot-eight-and-one-half-inches tall, weighed 262 pounds, and was right-handed. Tr. 445. Plaintiff testified that she has a valid driver's license, but her husband drove her to the hearing. Tr. 445. The ALJ noted that Plaintiff had a pulmonary

embolis and asked if she had to "have a filter placed for that?" Tr. 446. Plaintiff responded she did not but testified that she will have to take Coumadin[2] for the rest of her life. Tr. 446-47.

In 2001, Plaintiff worked for South Carolina Oncology Associates, and she confirmed that she "pulled charts, called the hospital to get patients' charts, to get x-rays [and] assisted [a] physician in doing something with handing him tools apparently for something to do with bone marrow." Tr. 447. Plaintiff testified that she would assist the doctor in taking bone marrow samples by dressing the patient, laying the patient on his abdomen, and sterilizing the area. Tr. 448.

Upon questioning by her lawyer, Plaintiff testified that she indicated she was disabled as of November 18, 2010, because that was the date she was diagnosed with breast cancer. Tr. 449. Plaintiff testified that she was running a daycare in her home when she was diagnosed with cancer. *Id.* Plaintiff testified that she had surgery on December 9, 2010, and officially stopped running the daycare on December, 12, 2010, so that she could undergo chemotherapy. *Id.* Plaintiff has not worked since the daycare closed. Tr. 449-50. Plaintiff testified that her doctor recommended she not return to work after her surgery because she was not "going to be able to lift these babies and everything because [she] just had major surgery." Tr. 450. Plaintiff testified that she completed chemotherapy in June of 2011. Tr. 451. Plaintiff underwent radiation from July to August of 2011. Tr. 452.

Plaintiff testified that she did not return to work after completing radiation treatment because of her rheumatoid arthritis. Tr. 453. Specifically, Plaintiff testified that her joints became swollen, and in response to the ALJ's request for an example, Plaintiff testified that her joints "would swell up to the point where [she] couldn't bend [her] hands [and] felt like [she] was

---

[2] Coumadin is a medication "used to treat blood clots (such as in deep vein thrombosis-DVT or pulmonary embolus-PE) and/or to prevent new clots from forming in your body." http://www.webmd.com/drugs/2/drug-4069/coumadin-oral/details (last visited July 13, 2015).

broken." Tr. 453. Plaintiff testified that "some days [the arthritis] is more severe than others." Tr. 453. Plaintiff was placed on infusion therapy for the rheumatoid arthritis, and the treatment ended when she was diagnosed with breast cancer. *Id.* Plaintiff has not received any infusion therapy treatment since her breast cancer surgery and testified that she takes methotrexate, an oral medication. Tr. 454. At the time of her hearing, Plaintiff was taking eight methotrexate pills once a week. *Id.* Plaintiff testified that she has problems with her hands, ankles, knees, and hips and "just feels like [her] whole body is broken." Tr. 455. Plaintiff testified that if she were to estimate, that she is unable to open her hands three or four times out of the week. Tr. 456. Plaintiff testified that she noticed a major change in the use of hands in "[a]bout the last eight months." Tr. 457. Plaintiff testified that all her joints swell and ache and she "[c]an't stand to be even touched." *Id.*

Plaintiff regularly sees Dr. Bruce Goeckeritz, a rheumatologist, with Lexington Rheumatology. Tr. 457-58. Plaintiff last saw Dr. Goeckeritz on March 14 [2013]. Tr. 460. The ALJ asked Plaintiff what event triggered the tremendous difference Plaintiff saw in her arthritic condition eight months ago, and he looked through her record to find "the first time [she] reported this to [her] physician, to [her] rheumatologist, the specialist." Tr. 461-62. Plaintiff stated she did not have a date. Tr. 462. Plaintiff's counsel stated she "didn't know that it exists" after an exchange between the ALJ, Plaintiff, and Plaintiff's counsel concerning whether there is evidence in the record to substantiate Plaintiff claim. Tr. 463.

Before her severe onset of rheumatoid arthritis, Plaintiff testified that she could take a bath without her husband's assistance, could cook, and "could clean the necessary things." Tr. 465. Plaintiff testified that she could no longer do those things like she used to. Tr. 465. Plaintiff testified that she now needs assistance with the shower and bath. Tr. 466. Additionally, Plaintiff testified that she only cooks twice a week now, when she used to cook every day. Tr. 469.

4

Plaintiff testified that she can sit for about 45 minutes before she has to stand up and is able to stand in one place for about 30 minutes. Tr. 471-72. Plaintiff testified that she does not use a cane but has difficulty with lifting her right arm. Tr. 472. She indicated that she could probably lift five pounds with her right arm "[b]ecause this is not healed up yet" from her December 9, 2012 surgery. Tr. 472. Plaintiff estimated that she could lift about five to ten pounds with her left arm though she did not have surgery on it. Tr. 473. Plaintiff testified that she had a walking restriction and could probably only walk to her mailbox. Tr. 475. Plaintiff testified that she became restricted to only walking that short distance since she gained weight and had rheumatoid arthritis. Tr. 476. Plaintiff testified that she weighed between 185-190 pounds before she was diagnosed with breast cancer and believes that the steroids she took for treatment made her gain weight. Tr. 477.

Plaintiff testified that she stays in bed on bad days and has bad days "[m]aybe three out of the seven [days]." Tr. 478. Plaintiff testified that she has been experiencing three bad days in a week for over a year. Tr. 478. Specifically, Plaintiff testified that the rheumatoid arthritis affects her ankles, knees, thighs, elbows, and shoulders and prevents her from getting out of bed on the bad days. Tr. 478-79. When asked what her activity is like on a good day, Plaintiff testified: [i]t's limited, but [she] could probably get up and sit at the table and eat breakfast." Tr. 479. Additionally, Plaintiff testified that she could probably wash her face and body and brush her teeth. Tr. 479.

### 2.    Lay Witness Testimony

Plaintiff's husband ("Husband"), Bruce Cornell Gray, also testified as a witness. Tr. 481. Husband testified that he and Plaintiff have been married for fourteen and a half years. Tr. 483. Husband works as a casual mail handler for the United States Postal Service. Tr. 483. Husband estimated that he works from 4:00 p.m. to 1:00 a.m. Tr. 485. Husband testified that he eats

breakfast between 7:30 a.m. and 9:00 a.m., eats lunch between 11:00 a.m. and 12:00 p.m., and eats dinner at work between 7:00 p.m. and 7:15 p.m. Tr. 485. Husband testified that before he leaves the house, he prepares Plaintiff's breakfast and lunch for her. Tr. 487. Husband testified that Plaintiff is able to feed herself. Tr. 487. Husband testified that he will also prepare and set aside food for Plaintiff in case she gets hungry later. Tr. 488. Husband testified that he cleans up after lunch. Tr. 488. When the ALJ stated and asked, "I can tell you the things you should say. You know. You do all the housework; you do all the laundry. Isn't that right? You do everything?," Husband responded, "Just about." Tr. 488-89.

Husband testified that he helps Plaintiff bathe by washing her back and helping her get in and out of the tub. Tr. 489. Husband testified that he has been helping Plaintiff with all these tasks for the past year. Tr. 490. Husband agreed that Plaintiff's condition gradually declined or got worse, and it affected her motor skills. Tr. 491. Husband testified Plaintiff will watch a little TV during the day or try to read the newspaper or a magazine but is "not on her feet very much." Tr. 491. Husband agreed that Plaintiff's condition is "not to the point yet where she's confined to sitting on the couch all day or lying down all day. . . ." Tr. 492. Husband estimated that Plaintiff has a slow day about three to four times out of the week when she gets out of bed after her normal time. Tr. 492-93.

>        3.     Vocational Expert ("VE") Testimony

William Stewart testified as the VE at Plaintiff's administrative hearing, and described Plaintiff's PRW as a medical assistant as light, skilled, and with a specific vocational preparation ("SVP") of six.[3] Tr. 495. The VE noted that this rating was "dependent on someone having either a certificate or a diploma." *Id.* After clarifying Plaintiff's work history as a medical assistant, the

---

[3] The VE noted that this rating was "dependent on someone having either a certificate or a diploma." Tr. 495. Later, Plaintiff clarified that she had a "certificate of medical assistant." Tr. 497.

VE indicated that "based on the description that was just given as opposed to that in the file, it appears that the DOT number is 079.367-010." Tr. 499. The VE described the work again as light, with an SVP of 6 but added "it sounds like some of the duties though were probably semiskilled [but] overall according to the DOT it's considered to be skilled work." *Id.* The ALJ asked the VE to consider a person of Plaintiff's age, education, and work experience with the following restrictions:  ability to lift, carry over 20 pounds occasionally, 10 pounds frequently; stand or walk 6 hours or less in an eight-hour work day; frequent stooping, twisting, crouching, kneeling, crawling, balancing or climbing of stairs or ramps; occasional climbing of ladders or scaffolds; frequent manipulation with the hands; occasional use of foot pedals or other controls with the lower extremities; and avoidance of vibration. Tr. 499. The ALJ asked if such a person could do Plaintiff's prior work, and the VE responded yes, "[u]nder that description that would not rule out medical assistant work." *Id.* The VE testified there appeared to be work in the national and local economy for an individual as described by the ALJ.[4] Tr. 500. The ALJ then asked the VE to consider the first hypothetical but changed the restriction of standing/walking to no more than 6 hours or less in an eight-hour work day to a 30-minute stand/sit option at the work station. Tr. 500. The VE answered that an individual in the ALJ's altered hypothetical would not be able to perform any of Plaintiff's prior work because of the sit/stand option. *Id.*

The VE testified that there are jobs available that such an individual could perform utilizing the following transferable skills acquired by Plaintiff:  clerical, numerical, medical policies and procedures, documentation records, assisting with medical procedures. Tr. 501. The available jobs included:  job scheduler, DOT number 237.367-010, sedentary, semiskilled, SVP:

---

[4] The VE had noted Plaintiff's description in the file of "lifting 300 pounds plus maximum, 100 pounds plus frequently." Tr. 495. After some discussion with Plaintiff she confirmed that when she worked as a CNA she did not lift 300 pound plus patients but assisted them in pivoting from bed to chair. Tr. 495-97.

3, 75,000-80,000 jobs nationally; order clerk, DOT 249.362-026, sedentary, SVP: 4, over 145,000 nationally; file clerk, DOT number 026.362-010, light, SVP: 3, semiskilled, at least 120,000 jobs.[5] Tr. 501. The VE testified that there was not a conflict between the skill and exertional requirements of the individual jobs cited and those jobs as described in the DOT, except that the DOT does not cover the sit/stand option and "the file clerk or records clerk is actually light in the DOT, but in both cases the sit-stand option in the file or records clerk type of work that was based on my years of clinical or professional experience evaluating, counseling clients and assisting them in accessing these kinds of jobs over the years." Tr. 502.

Plaintiff's counsel asked the VE to assume a person suffering from rheumatoid arthritis, suffering exacerbations of pain on a average of two times weekly that would cause the person to be late for work by a number of hours twice a week with the limited ability to sit for 45 minutes to an hour without having to "stand to relieve themselves let's say for 15 minutes after that and that the walking is limited on these exacerbation dates to 50 feet and that the lifting is less than 10 pounds." Tr. 502-03. The VE testified that a person with those limitations would not be able to perform any of the jobs he previously mentioned. Tr. 503. The VE testified that being late or absent would override the other limitations, like the sit/stand and walking limitation. Tr. 503. The VE's answer did not change if the late/absent limitation changed to one day in the week. Tr. 504. When asked by the ALJ if any jobs, not just those the VE had previously described, would be available to the individual Plaintiff's counsel described, the VE responded "no." Tr. 504.

II.  Discussion

    A.     The ALJ's Findings

---

[5] The VE did not indicate how many local jobs were available under the hypotheticals and in his description of "file clerk" did not specify whether 120,000 jobs were available nationally or locally. Tr. 501.

In his September 5, 2013 decision, the ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.  The claimant has not engaged in substantial gainful activity since November 18, 2010, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: rheumatoid arthritis and residuals of cancer of the right breast (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that she can lift and carry up to twenty pounds occasionally and ten pounds frequently. She requires an option to alternate sitting and standing at the workstation at intervals of about thirty minutes. She can frequently stoop, twist, kneel crouch, crawl, and climb stairs or ramps but only occasionally climb ladders or scaffolds. She can do no more than frequent manipulation with the hands and no more than occasional use of foot pedals or other controls with her lower extremities. She must avoid vibration.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on March 18, 1964, and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). She is now 49 years old.

8.  The claimant has at least the equivalent of a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferrable to other occupations with jobs existing

in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from November 18, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 15-25.

B.  Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[6] (4) whether such impairment prevents claimant from performing PRW; and (5)

---

[6] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. §§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these

whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b), 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146 n.5 (regarding burdens of proof).

---

Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See Id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.    Analysis

Plaintiff claims the ALJ's RFC analysis does not rest on substantial evidence. Pl.'s Br. 11-13, ECF No. 20. Specifically, Plaintiff maintains that the "central issue in this case is the frequency of [her] arthritis flare-ups and her functionality during those time periods." *Id.* at 11.

By failing to address this central issue, Plaintiff argues that the ALJ's RFC analysis is flawed. *Id.* Plaintiff also maintains that the ALJ "off-handedly dismissed both treating physicians' opinions as unsupported by objective findings." *Id.* at 11-12 Finally, Plaintiff maintains that she was almost 50 years old when the ALJ issued his decision and this "borderline age" situation would have changed the outcome of her case. *Id.* at 12. The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence. Def.'s Br., ECF No. 22.

1.     Treating Physician Opinions[7]

Plaintiff asserts that both her treating physicians indicated that Plaintiff's rheumatoid arthritis flare-ups were not controlled, and the ALJ "ignored this completely." ECF No. 20 at 12. Additionally, Plaintiff argues that the ALJ "did not demonstrate any evidence that [her] condition was in complete remission[, and] did not point to any evidence of record indicating that during flares, her abilities were consistent with the RFC he assigned." *Id.* The Commissioner argues that the ALJ "was not required to adopt the extreme limitations found in Plaintiff's treating physicians' opinions in his RFC determination." ECF No. 22 at 17.

If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The Commissioner typically accords greater weight

---

[7] Although Plaintiff did not address the ALJ's consideration of her treating physicians' opinions as a separate allegation or error, the undersigned will address the treating physician opinion evidence first.

to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c)(2). The rationale for the general rule affording opinions of treating physicians greater weight is "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson*, 434 F.3d at 654 (citing *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)). The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence."  *Mastro*, 270 F.3d at 178. Social Security Ruling 96-2p requires that an unfavorable decision contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence.

Here, Plaintiff maintains that the ALJ improperly discounted two treating physicians' opinions. On March 14, 2013, Dr. Bruce Goercheritz of Lexington Rheumatology wrote in a letter that Plaintiff has chronic pain related to her arthritis as well as the treatment associated with her breast malignancy. Tr. 383. Additionally, Dr. Goercheritz opined that Plaintiff "is

currently unable to work due to our inability to control her musculoskeletal symptoms, which limit her ability to perform." *Id.* Dr. Goercheritz considers Plaintiff "totally disabled." *Id.* In his order, the ALJ found that Dr. Goercheritz's letter was not entitled to special significance because it was not a "medical opinion" but an "administrative finding [that is] dispositive of the case." Tr. 23. Moreover, the ALJ found that "Dr. Goeckeritz has not identified any clinical findings to support this generic conclusion of disability, nor has he described specific functional limitations in [Plaintiff] that would preclude work." *Id.*

Initially, the undersigned notes that statements of disability from a medical source, like the one from Dr. Goercheritz, are not given special consideration pursuant to the express language in the regulations. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Specifically, the regulations indicate that "opinions that [a claimant is] disabled" are not medical opinions but are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. §§ 404.1527(d)-(d)(1), 416927(d)-(d)(1). Statements by a medical provider that a claimant is "disabled" or "unable to work" do not automatically determine disability under the regulations. 20 C.F.R. § 404.1527(d)(1); *see also* 416.927(c)(2). Rather, the regulations instruct the ALJ to use medical providers "to provide evidence, including opinions, on the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(d)(2); *see also* 416.927(c)(2). Furthermore, the regulations indicate that medical opinions "on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart" are considered, but "the application of vocational factors, [and] the final responsibility for deciding these issues is reserved to the Commissioner." *Id.* Therefore, the ALJ did not err by not giving special significance to Dr. Goercheritz's letter.

Moreover, the ALJ considered all of Dr. Goercheritz's medical treatment notes in his decision beginning with Plaintiff's July 14, 2011 appointment when Plaintiff complained of pain in her ankles, hands, and elbows. Tr. 22; 271-73. In summarizing Plaintiff's appointment, the ALJ noted that "Dr. Goeckeritz found no evidence of swelling or limited motion of her hands, but there was some swelling of her wrists. Her elbows and shoulders were unremarkable. There was bilateral swelling and tenderness of her ankles." *Id.* The ALJ acknowledged Dr. Goeckeritz advised Plaintiff to restart Methotrexate and after an August 30, 2011 appointment advised Plaintiff to continue Prednisone and Methotrexate. Tr. 22; 311-12. The ALJ noted Plaintiff's return visit on November 28, 2011, and Dr. Goeckeritz's notes that Plaintiff lost over 20 pounds and his comment "that her pain complaints at that visit seemed disproportionate to the clinical findings." *Id.*; 309-10. The ALJ noted Plaintiff's December 13, 2011 return visit[8] and the results of a DEXA bone scan as well as Plaintiff's January 2, 2012 visit. Tr. 22; 307.

The ALJ also found that Dr. Patterson's May 15, 2013 opinion "describing limitations that would preclude all work activity" was not "supported by objective clinical findings or persuasive in evaluating the claimant's disability." Tr. 23. Furthermore, the ALJ noted:

> The limited treatment notes from Dr. Patterson do not describe objective clinical findings to support the extreme limitations she included in her document, nor do the records of any other physician treating the claimant. Interestingly, Dr. Patterson wrote that the claimant requires a cane to ambulate, while the claimant specifically denied using a cane or walker in her testimony. The claimant also acknowledged her capacity for other exertional activities that Dr. Patterson stated she could not perform.

*Id.* In a Medical Source Statement, Dr. Patterson found that Plaintiff had the following limitations because of swelling, tenderness, and limited range of motion in joints of hands and both knees: Plaintiff could sit, stand, or walk for four-and-one-half hours in an eight-hour work day; Plaintiff could never lift/carry any weight; Plaintiff must frequently change position due to

---

[8] Plaintiff was examined by Dr. Patterson on December 13, 2011. Tr. 305.

pain or lie down; Plaintiff requires a cane to ambulate and can walk 50 feet without use of a cane; Plaintiff cannot reach overhead, handle, finger, feel, or push or pull with either upper extremity; Plaintiff can occasionally reach with either extremity; Plaintiff can never operate foot controls with either lower extremity; Plaintiff can never climb ladders or scaffolds, balance, kneel, crouch, or crawl. Tr. 404-09. Additionally, Dr. Patterson indicated that Plaintiff can never be exposed to unprotected heights, moving mechanical parts, extreme cold, extreme heat, or vibrations and can occasionally be exposed to operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, and can tolerate moderate office noise. Tr. 408. Dr. Patterson indicated that Plaintiff cannot ambulate without a cane, walk a block at a reasonable pace on rough or uneven surfaces, climb a few steps at a reasonable pace with use of a single hand rail, or sort, handle, use paper/files. Tr. 409. However, Dr. Patterson indicated that Plaintiff can perform activities like shopping, traveling without a companion for assistance, use standard public transportation, prepare a simple meal and feed herself, and care for her personal hygiene. *Id.*

As he did with Dr. Goeckeritz, the ALJ considered all of Dr. Patterson's medical treatment notes in his decision beginning with Plaintiff's June 27, 2011 appointment when Plaintiff complained of joint pain in her hands, elbows, knees, and ankles. Tr. 21; Tr. 269-70. The ALJ noted that a physical examination indicated Plaintiff had synovitis in her ankles only, "with intact sensation and full range of motion of all extremities." Tr. 21-22. Dr. Patterson then referred Plaintiff to Dr. Goeckeritz, a new rheumatologist, who Plaintiff saw in July and August of 2011 as indicated above. Tr. 22. On October 3, 2011, Plaintiff returned to see Dr. Patterson complaining of pain to her ankle after twisting it, and Dr. Patterson ordered x-rays and prescribed Ibuprofen. Tr. 22; 306. Plaintiff last saw Dr. Patterson on April 30, 2013, for joint

pain, but "the note included in the record does not identify any clinical findings or treatment measures." Tr. 22; 384-85.

The undersigned reviewed Plaintiff's medical records and finds that the ALJ properly recounted medical findings and assessments from Plaintiff's examinations. The undersigned notes that a February 15, 2012 examination by Dr. Patterson was the only appointment date the ALJ failed to include in his medical chronology. Tr. 303-04. Plaintiff's chief complaint during this February visit was a nosebleed, and Plaintiff also stated that she was having issues with rheumatoid arthritis. *Id.* No swelling, range of motion, or other objective findings were noted during this examination. *Id.*

Two non-treating physicians opined that Plaintiff could perform "light" work. Tr. 42-45; 57-58. Specifically, on October 21, 2011, Dr. Matthew Fox opined that Plaintiff could perform light work, Tr. 45-46, and on April 27, 2012, Dr. William Lindler opined that Plaintiff could perform light work. Tr. 61-62. These opinions are persuasive contrary evidence to the opinions of Plaintiff's treating physicians. Though these non-treating physicians opined that Plaintiff could perform light work, the ALJ found that Plaintiff was limited to performing sedentary work rather than light work stating that the "evidence as a whole more persuasively establishes" the RFC he described. Tr. 19, 24.

As detailed above, the ALJ gave less weight to the opinions of Plaintiff's treating physicians based on all assessments and objective results from a range of tests. Additionally, as required by Social Security Ruling 96-2p the ALJ listed other objective medical evidence in support of his reasoning for the amount of weight given to Plaintiff's treating physicians. Based on the ALJ's consideration of all medical opinions and application of objective medical findings to the facts of this case, the undersigned finds that the ALJ's decision is based on substantial

evidence. Accordingly, the undersigned recommends affirming the ALJ's decision to discount the opinions of Plaintiff's treating physicians in this appeal.

2.    RFC Assessment

Plaintiff also alleges the ALJ failed to consider all of the available evidence when determining that Plaintiff is capable of sedentary work. ECF No. 20 at 11-12. In addition to ignoring her treating physicians' opinions, Plaintiff maintains that the ALJ also failed to determine and state whether Plaintiff could perform these demands on a regular and continuing basis. *Id.*

The determination of whether a person is disabled by pain is a two-step process involving a finding of the credibility of the individual's statements about symptoms. SSR 96–7p. First, "there must be objective medical evidence establishing some condition that could reasonably be expected to produce the pain alleged." *Craig*, 76 F.3d at 592. Second, and only after the threshold obligation has been met, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Craig*, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). At the first step, "the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment . . . which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." *Craig*, 76 F.3d at 594. After "an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, [at the second step of the credibility inquiry] she ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lens because the plaintiff's allegations . . . are consistent with the objective expectations." *Parker v. Astrue*, 664 F. Supp. 2d 544, 553 (D.S.C. 2009) (internal citation omitted).

Here, the ALJ found that Plaintiff "has the residual functional capacity to perform a wide range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." Tr. 19. Specifically,

the ALJ found that Plaintiff "can lift and carry up to twenty pounds occasionally and ten pounds frequently." Tr. 19. Additionally, the ALJ found that Plaintiff "requires an option to alternate sitting and standing at the workstation at intervals of about thirty minutes." *Id.* The ALJ also found that Plaintiff "can frequently stoop, twist, kneel, crouch, crawl, and climb stairs or ramps but only occasionally climb ladders or scaffolds. She can do no more than frequent manipulation with the hands and no more than occasional use of foot pedals or other controls with her lower extremities. She must avoid vibration." *Id.*

The ALJ found that after "careful consideration of the evidence, [that] claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the statements of the claimant and her husband concerning the intensity, persistence and limiting effects of these symptoms are not substantiated by the total evidence of record and are not entirely credible . . . ." Tr. 20. The ALJ made this assessment based on factors enumerated in SSR 96-4p and 96-7p. *Id.* Additionally, the ALJ thoroughly considered and outlined Plaintiff's physical impairments. Tr. 19-24. The ALJ noted that a February 2012 medical note from Plaintiff's surgeon indicated that "the wound at the mastectomy site was nearly fully healed." Tr. 21. Regarding Plaintiff's rheumatoid arthritis condition, the ALJ found that a July 2011 examination indicated "no evidence of swelling or limited motion of her hands [though] there was some swelling of her wrists." Tr. 22. Furthermore, the ALJ found that:

> The clinical picture reflected in these treatment records shows quite limited objective findings to support the degree of limitations asserted by the claimant. The records of her oncologists show good results from her mastectomy, with no evidence or recurrence of her cancer. Her chemotherapy required cessation of some of the medications for her rheumatoid arthritis, but since the completion of chemotherapy, she has returned to an essentially stable regimen of medication for that condition. The record also shows prolonged periods with no treatment for any complaint related to rheumatoid arthritis. There are no clinical findings to substantiate disability. The objective clinical findings from her treating sources support the residual functional capacity described above.

*Id.* The ALJ followed the mandates of the regulations, including SSR 96-7p, when making his RFC determination. Additionally, the ALJ considered the whole record and cited a detailed account of Plaintiff's medical history in his analysis. Therefore, substantial evidence supports the ALJ's RFC assessment, and the undersigned recommends affirming the ALJ's assigned RFC on appeal.

3.    Borderline Age

Plaintiff maintains that the ALJ's decision was issued only months before she turned 50 years old. ECF No. 20 at 12. Plaintiff argues that "[a]t that age, with her medical/vocational profile, a finding of 'disabled' would have attached under the Medical-Vocational Guidelines." *Id.* (citing 20 C.F.R. Part 404, Subp. P, App'x 2, § 201.14).[9] Additionally, Plaintiff argues that "guidelines direct adjudicators to identify potential 'borderline age' situations in which the application of rules such as the Grids would change the outcome of the case." *Id.* (citing HALLEX II-5-3-2). However, the Commissioner argues that Plaintiff was not subject to a borderline age situation because the ALJ did not use the Grid Rules to direct a finding on Plaintiff's disability. ECF No. 22 at 21. Specifically, the Commissioner maintains that Plaintiff's borderline age argument is irrelevant because the ALJ "appropriately relied upon the VE's testimony and looked to the Grid Rules as a 'framework' in making his decision." *Id.* at 22.

An ALJ may determine that sufficient jobs exist by relying on the testimony of a VE *or* by relying on the Medical-Vocational Guidelines. The Medical-Vocational Guidelines are guidelines, located at 20 C.F.R. Part 404, Subpart P, appendix 2. *See Heckler v. Campbell*, 461 U.S. at 461. In more complex cases, an ALJ may use a VE to provide an "analysis of the impact of the RFC upon the full range of . . . work, which the adjudicator may consider in determining

---

[9] The Medical-Vocational Guidelines are sometimes referred to as the "Grids" on the "Grid Rules."

the extent of the erosion of the occupational base, examples of occupations the individual may be able to perform, and citations of the existence and number of jobs in such occupations in the national economy." SSR 96-9p, 1996 WL 374185, at * 9. "The term 'occupational base' means the approximate number of occupations that an individual has the RFC to perform considering all exertional and nonexertional limitations and restrictions." *Id*. at *3. The use of a VE is not mandatory. *Davis v. Astrue*, No. 2:10-CV-30, 2011 WL 399956, at *27 (N.D.W. Va. Jan. 11, 2011) (citing *Clarification of Use of Vocational Experts and Other Sources at Step 4 of the Sequential Evaluation Process*, 68 Fed. Reg. 51153, 51160 (Aug. 26, 2003)). "If Plaintiff's nonexertional limitations have a minimal effect on his exertional occupational base, then a finding directed by the Grids is sufficient, and testimony by a VE is unnecessary." *Boland v. Astrue*, No. 3:08-CV-798-HEH, 2009 WL 2431536, at *7 (E.D. Va. Aug. 7, 2009) (internal citations omitted). However, where an ALJ chooses to use a VE and propounds appropriate hypotheticals including all of the claimant's impairments and limitations to the VE, and where the VE's response is adequately supported by available information, the VE's opinion is substantial evidence upon which the ALJ's disability determination may rest. *See Coe v. Colvin*, No. 7:13-cv-064, 2014 WL 3533973 (W.D. Va. July 15, 2014); *Corley v. Colvin*, No. 9:12-2676-TMC, 2014 WL 607706 (D.S.C. Feb. 18, 2014); *see also Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (hypotheticals must "fairly set out all of claimant's impairments").

Regardless of Plaintiff's age category, "it would have been improper for [the] ALJ [] to consider her age category in the context of the grids to determine her disability, because her RFC included non-exertional limitations." *Mench v. Astrue*, No.-CIV-SKG-12-01184, 2013 WL 4747971, at *10 (D. Md. Sept. 3, 2013) (referencing *Grant v. Schweiker,* 699 F.2d 189, 192 (4th Cir. 1983) (citing 20 C.F.R. Part 404, subpart P, Appendix 2, § 200.00(a, d-e); 20 C.F.R. § 404.1569) (holding because grids do not address non-exertional limitations, they cannot be used

if a claimant's RFC includes information not listed in an exertional definition)). Here, the ALJ placed exertional and non-exertional restrictions on Plaintiff's jobs based on her rheumatoid arthritis. *See* Tr. 19. As a result of these limitations, the ALJ properly relied on the VE's testimony rather than the Grids, and included the proper age considerations in doing so. Tr. 24 (citing 20 C.F.R. §§ 404.1563 and 416.963). Accordingly, Plaintiff's borderline age argument is without merit.

III. Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record and the decision is supported by substantial evidence. Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under the Act, it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

July 16, 2015                                        Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**